## SUPREME COURT.

### SAMUEL MORRIS agt. DANIEL J. WHELAN.

*Office and officer — How title to a public office to be tried prior to and since the adoption of the Code of Civil Procedure — Code of Civil Procedure, sections 1948, 1949, 1955, 1984.*

Prior to the adoption of the present Code of Civil Procedure, it was well settled that the title to a public office in this state could only be tried in an action brought in the name of the people of the state by their attorney-general.

Under the Code of Civil Procedure, the people are necessary parties to an action to try the title to an office. The rule is the same where the title is to be tried indirectly, as in an action to enjoin the incumbent. Section 1948 expressly provides that such an action must be brought in the name of the people of the state.

An office is not the property of an individual, but of the people. They have an interest in the exercise of its functions, and no court should, without giving them an opportunity to be heard, undertake to decide what individual must possess its emoluments and discharge its duties, even for a single hour.

Where a person usurps or "*intrudes*" into a public office, civil or military, and the attorney-general brings his action to oust him, no injunction can be obtained *pendente lite ;* nor can a party who, as is conceded, has no right to bring an action to test the title, obtain a relief (*i. e.,* an injunction), which the people cannot be afforded.

*Special Term, June,* 1882.

APPLICATION for an injunction to restrain the defendant from acting as president of the common council of Troy.

*Townsend & Roche,* for motion.

*R. A. Parmenter,* opposed.

WESTBROOK, *J.* — The plaintiff claims that at the regular annual meeting of the common council of the city of Troy, held on the Tuesday succeeding the second Monday of November, 1881, he was regularly and legally elected to the presidency thereof. That he accepted said office, and proceeded

to discharge its duties, and became thereby *ex-officio* a member of the contracting board, and as such entitled to an annual salary to be fixed by said board, not exceeding $800.

That as president of the common council he presided at its meetings, appointed its committees, and has frequently been recognized as such president by said contracting board, and the authorities of the city.

That on the 16th day of March, 1882, while the plaintiff was attending a meeting of the common council, and undertaking to act as its president, the defendant assumed to call the meeting to order, and directed that no attention should be paid to the plaintiff. That thereupon the plaintiff, as he alleges, seeing that there was no quorum present, declared the meeting of the common council adjourned, and proceeded to leave the room, which he was prevented from doing by order of the defendant.

The plaintiff then avers that the defendant acted as he did upon the assumed claim that he (the defendant) had been elected president of the common council, the truth of which the plaintiff denies, but avers on the contrary thereof that he, the plaintiff, is still the incumbent of the office.

The plaintiff then asks that as the payment of claims against the city, audited at a meeting of the common council, presided over by the defendant, will be resisted, as further attempts by the defendant to act as president of the common council will produce "much violence and unseemly conduct at said meeting, and confusion and disorder in the public and governmental affairs of said city," and as the action of the defendant may interfere with the obtainment by the plaintiff of his salary as a member of the contracting board, that the plaintiff may have "judgment against the defendant, that the defendant be enjoined and restrained from discharging or attempting to discharge the duties, or exercising or attempting to exercise the powers of the office of president of the common council of the city of Troy during the period ending on the Tuesday succeeding the second Monday of November next, or in any

manner interfering with the plaintiff in the discharge of the duties thereof, and for the costs of the action, and that in the meantime," the defendant may be so restrained and enjoined by the order of the court.

The defendant, by his answer, denies substantially all the allegations of the complaint. He specifically denies that the plaintiff was ever elected president of the common council, and insists that such pretended election was accomplished by recognizing as members of such council James Morrissey and Richard H. Van Alstyne, who were not aldermen of the city; that an alleged quorum of the common council was also obtained at subsequent pretended meetings thereof, presided over by the plaintiff, by recognizing said Morrissey and Van Alstyne as members thereof; that the term of the office of the president of the common council is not fixed by law, and continues only during the will of a majority of its members; and that while the plaintiff was usurping the office, on the first Thursday of March, 1882, at a regular meeting of the common council, by the votes of "fourteen regularly duly elected aldermen, all holding proper credentials and having duly qualified," he was made president of such common council. The proceedings of such meeting are detailed in the answer at some length.

That since such election the defendant has been in full possession of the office of president of the common council, exercising its duties, recognized as such by all the officers of the city government, and the ordinances and proceedings of that body, presided over by the defendant, have been respected and obeyed as such "by all the departments of the said city government."

The allegations of the answer are sustained by the affidavits of thirteen persons, who are alleged to be aldermen, and also by the affidavit of Charles R. De Freest, the city clerk of the city of Troy, which have been read upon the present motion for an injunction *pendente lite*.

From the foregoing statement of the moving and opposing

papers, it is evident that it is impossible to determine with any accuracy the facts upon which the title of the parties to the office of president of the common council depends. Such an attempt will not be made, for, in the view which I have taken of this action, it would only be the expression of an opinion upon the occupancy of and title to an office which cannot be settled in the present suit.

From the relief demanded in the plaintiff's complaint, as well as from all its allegations, it is also evident that the question which it seeks to present is the title to the office of president of the common council of the city of Troy. Prior to the adoption of the present Code of Civil Procedure, to the provisions of which reference will presently be made, it was well settled that the title to a public office in this state could only be tried in an action brought in the name of the people of the state by their attorney-general (*City of Buffalo* agt. *Mackey*, 15 *Hun*, 204 ; *People* agt. *Ferris and Lyon*, 16 *Hun*, 219). In the last cited case, which was a proceeding by *mandamus* to prevent Lyon from acting as president of the board of trustees of the village of White Plains, to which Lyon claimed he had been elected, and is therefore the identical case now presented, it was held that the *mandamus*, which would operate as an injunction, should be denied, and that " the remedy prescribed by law for determining the title to an office is an action in the nature of *quo warranto*." The Code of Civil Procedure, however, contains explicit provisions upon the subject, and to these provisions reference is now made.

By the first subdivision of section 1948, the attorney-general is authorized to maintain an action " against a person who usurps, intrudes into, or unlawfully holds or exercises, within the state, a franchise, or a public office, civil or military, or an office in a domestic corporation."

Section 1949 provides : " In an action brought as prescribed in the last section for usurping, intruding into, unlawfully holding or exercising an office, the attorney-general, besides

Morris agt. Whelan.

stating the cause of action in the complaint, may, in his discretion, set forth therein the name of the person rightfully entitled to the office, and the facts showing his right thereto.; and thereupon, and upon proof, by affidavit that the defendant, by means of his usurpation or intrusion, has received any fees or emoluments belonging to the office, an order to arrest the defendant may be granted by the court or judge."

Section 1984 requires the action to be brought in the name of the people.

It is worthy of note, too, that while the Code has made provisions for an action to test the title to an office, and has provided for the arrest of the defendant if he is receiving the fees and emoluments of the office, and has also provided for an injunction (*sec.* 1955) in a case brought under subdivision 3 of section 1948, which is the same section under which the title to an office can be tried in an action brought by the attorney-general, it does not explicitly give an injunction pending the action against the (to use the words of subdivision 1 of said section 1948), " person who, usurps, intrudes into, or unlawfully holds or exercises, within the state, a franchise, or a public office, civil or military."

The provisions of our present Code are not new (2 *Edmond's Statutes,* 603 ; *old Code, sec.* 482 ; *Throop's note to sec.* 1948 *of present Code*), and the absence of any provision authorizing an injunction in an action brought by the attorney-general, when in another action instituted by him under the same section that power is expressly conferred, is significant to show that the old rule so long established, that temporary injunctions pending an action brought to try the title to an office (*Tappan* agt. *Gray,* 9 *Paige,* 507 ; *same case in court of errors,* 7 *Hill,* 252 ; *The Mayor* agt. *Conover,* 5 *Abbott,* 171 ; *The People* agt. *Sampson,* 25 *Barbour,* 254 ; *Hartt* agt. *Hawley,* 32 *Barbour,* 55) was intended to be preserved under the present Code, even when the action was brought by the attorney-general.

As to the intention of the enactments of the Code providing

'Morris agt. Whelan.

for actions by the attorney-general, its compiler has left us in no doubt, for in his note to section 1949 he says: "The people are necessary parties to an action to try the title to an office (*City of Brooklyn* agt. *Mackey*, 15 *Hun*, 204). *The rule is the same when the title is to be tried indirectly, as in an action to enjoin the incumbent* (*N. Y. Juvenile Guardian Society* agt. *Roosevelt*, 7 *Daly*, 188; *People* agt. *Ferris*, 16 *Hun*, 219; *see sec.* 1984, *post*)." That section (1984) to which he refers, expressly provides that such an action "must be brought in the name of the people of the state."

The reason for the rule is obvious. An office is not the property of any individual, but of the people. They have an interest in the exercise of its functions and no court should, without giving them an opportunity to be heard, undertake to decide what individual must possess its emoluments and discharge its duties even for a single hour.

It is said, however, in behalf of the plaintiff, that as he is in possession of the office, he has the right to an injunction to restrain the defendant from interfering with him in the discharge of its duties. To substantiate this proposition *Palmer* agt. *Foley* (36 *N. Y. Supr. Ct. R.*, 14) is cited. It is true that in that case a majority of the superior court (judges MONELL and FREEDMAN), held, a minority (judge CURTIS) dissenting, that the plaintiff, as the incumbent of the office of deputy chamberlain of the city of New York, was entitled to an injunction against the defendant, restraining him from interfering with the plaintiff in the discharge of its duties. That decision, however, cannot be adopted as the law of this case, because,

*First.* The incumbency and possession of the office by the plaintiff, at the time of the institution of this action, is denied. Since the alleged election of the defendant in March last, he, at least, claims, and the papers submitted upon this motion are certainly very corroborative of such claim, that he has been in the exclusive possession of the office of president of the common council of the city of Troy, exercising its func-

tions and recognized as the rightful incumbent thereof by the officials of the city.

*Second.* The relief sought in this action — the enjoining of the defendant from acting as president of the common council until the expiration of the term for which the plaintiff claims to have been elected — must involve the trial of the title to the office itself. If the plaintiff is not the *de jure* president, he certainly should not be maintained in possession by an injunction, simply and only because he is in possession.

It is no answer to this argument to say, that as the possessor of the office the plaintiff is simply seeking to keep out an intruder, and therefore the issue of title to the office itself is not presented. This view is fallacious, because the fact that the defendant is an intruder cannot be assumed, but must be proved; and the attempt to prove it must involve an inquiry into the title to the office. In short, however specious the argument to distinguish this action from one brought to recover the office itself is, it is apparent that the attempt is after all to indirectly try the title thereto, which cannot be done unless the people are parties (*Throop's note to section* 1949 *of the Code, and cases there cited*).

*Third.* It has already been shown that when a " person usurps or *intrudes* into    *    *    *    a public office, civil or military " (*Code sec.* 1943), and the attorney-general brings his action to oust him, no injunction can be obtained *pendente lite ;* and it would be a little remarkable if a party who, as is conceded, has no right to bring an action to test the title, could obtain a relief which the people cannot be afforded. The case cited and relied upon by the plaintiff cannot, as it seems to me, be sound, because it is placed by the majority of the court upon the ground that when a defendant is a *usurper* and *intruder* into an office its possessor may have the remedy of an injunction. This is in conflict with the Code, which in such cases gives the remedy to the attorney-general only, and does not, as has just been said, give him the right to an injunction.

Morris agt. Whelan.

*Fourth.* The alleged disturbance of the public peace, and violence, which are said to be feared if the injunction is not granted, furnish no reason for its issue. Criminal proceedings can be instituted for a violation of law, and afford an ample remedy (*Burch* agt. *Cavanaugh*, 12 *Abb.* [*N. S*], 410).

*Fifth.* If the defendant undertakes to draw the salary to which the plaintiff declares himself entitled, the Code (*sec.* 1949) provides a remedy, if an action is brought in proper form and by the proper parties.

In concluding this opinion in denial of the plaintiff's motion for an injunction during the pendency of this action, it seems to me proper to say there is no reason apparent to my mind why this controversy cannot be speedily settled by a trial. There is a circuit soon to be held in the county of Rensselaer. By consent of parties, who both profess to be desirous of a rapid legal decision, an action can be brought by the attorney-general and then and there tried. If parties do not consent, that circuit can be adjourned to a day in the future, when an issue made in the attorney-general's action can be noticed for trial and disposed of. This course will present the questions involved in the contests of these parties without embarrassment, so that they can in due form of law be settled. The machinery of the law is certainly ample to afford speedy redress, for even though there was no circuit to be held in the county of Rensselaer, near at hand, the governor can convene an extraordinary term for the purpose of disposing of these important questions—important to the parties, to the citizens of Troy and to the people of the State.